UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| KEITH BELL, § | |
|     Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:20-cv-1157-P |
| § | |
| EAGLE MOUNTAIN-SAGINAW § | |
| INDEPENDENT SCHOOL DISTRICT, § | |
|     Defendant. § | |

### DEFENDANT EAGLE MOUNTAIN-SAGINAW INDEPENDENT SCHOOL DISTRICT'S REPLY TO PLAINTIFF'S RESPONSE TO ITS MOTION TO DISMISS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES Defendant Eagle Mountain-Saginaw Independent School District (hereinafter, "the District," or "EMSISD") and in support of its Reply to Plaintiff's Response to its Motion to Dismiss shows the Court the following:

### I. REPLY

1. In his lawsuit, Plaintiff attempts to "cover all his bases" by alleging that the tweet and retweet are violations of copyright law under a direct infringement, vicarious infringement, or contributory infringement theory of liability and tries to reject the fair use doctrine's applicability in this case. (Docket Entry ("DE") 1, pp. 9-14). Plaintiff in his response (DE 13) likewise does not narrow his theories of liability; however, he takes issue with the District's arguments against his various theories, claiming that the District is taking different positions (DE 13, p. 4); however given the multiple divergent theories Plaintiff alleges, the District must at this stage of the litigation provide legal arguments related all theories (even though Plaintiff should be forced to narrow his theories based on the actual facts of this case). Defendant re-urges its arguments about the various theories of liability (direct, contributory, and vicarious) and asks the Court to dismiss all claims,

1

or at a minimum, narrow the different theories. Defendant will not address these arguments again here and will instead focus on the fair use doctrine since Plaintiff spends much of his Response on that issue. Defendant likewise will not address the declaratory action since Plaintiff unequivocally states that he abandons and dismisses that action. (DE 13, p. 11).

2.      Defendant also notes that Plaintiff also takes issue with the cases cited by the District. However, even a simple search on Westlaw will show a ***dearth*** of cases in the Western District regarding "tweets" and copyright law (two of which are Bell's own former cases against other school districts). As such, the Court and the parties stand to benefit from the case law that does exist, even if it is not in the Fifth Circuit. However, even where cases address copyright law, Defendant urges that the facts of this case are often very different from others where the typical suit involves large corporations and substantial commercial gains and losses; here, there is *one* tweet and *one* retweet of one page of a book on the same day by two websites supporting a high school softball team and color guard team. Such *de minimus* use showing nothing more than approval and commentary is fair use, and the Copyright Act was never intended to be used to litigate such limited fair use.

    **A.**    **Fair Use**

3.      "[A]nyone who ... makes a fair use of [a] work is not an infringer of the copyright with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). This principle has been recognized since "the infancy of copyright protection" as a "necessary" tool for "fulfill[ing] copyright's very purpose*." Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 575, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). "Since its beginnings, the doctrine of fair use has been refined, honed, and clarified in many Court decisions" albeit very little in the context of a Twitter post. *See Triangle Publ'ns, Inc. v. Knight–Ridder*

*Newspapers, Inc.*, 626 F.2d 1171, 1174 (5th Cir. 1980). However, at the most basic level, fair use is a "rule of reason fashioned by Judges to balance the author's right to compensation for his work, on the one hand, against the public's interest in the widest possible dissemination of ideas and information, on the other." *Id.* (internal quotation marks omitted).

4.  Courts consider at least four statutory factors in evaluating fair use: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107.

### 1. Purpose and Character

5.  ***Defendant's Conduct.*** Under the first factor, courts often consider the culpability of a defendant's conduct in acquiring or using a work, the extent to which such use is transformative, and whether such use is for commercial or non-commercial purposes. See, *Peteski Prods., Inc. v. Rothman*, 264 F. Supp. 3d 731, 736 (E.D. Tex. 2017) (citing *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2nd Cir. 2004) ("Harper & Row directs courts to consider a defendant's bad faith in applying the first statutory factor.")); *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 823 (5th Cir. 2002) ("The key question under the 'purpose and character' prong is ... whether and to what extent the new work is 'transformative.' "); *Campbell*, 510 U.S. at 584. ("[T]he commercial or nonprofit educational purpose of a work is ... one element of the first factor ...."). Here, Plaintiff has alleged no facts to show that the use was in bad faith or of a commercial nature. The Supreme Court's analysis in *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 540, 105 S. Ct. 2218, 2220, 85 L. Ed. 2d 588 (1985), is helpful here. In *Harper & Row*, the Court considered whether fair use existed where Defendant, THE NATION, had summarized and quoted substantially

3

from *A Time to Heal*, President Gerald Ford's memoir of his decision to pardon former president Richard Nixon. When Harper & Row, who held the rights to *A Time to Heal*, brought suit, THE NATION asserted that its use of the book was protected under the doctrine of fair use, because of the great public interest in a historical figure's account of a historic incident. There, the work was clearly of a commercial nature. Here, based on the face of Plaintiff's pleadings, there is one tweet and a retweet by educational extracurricular groups, the Color Guard and Softball Twitter accounts on the same day. Plaintiff also cites to *Campbell*, 510 U.S. at 575; however, Plaintiff fails to note the very different facts in that case where a rap music group produced a song that they claimed was a parody was sued by the corporate owner of the original rock ballad for copyright infringement. The court found the commercial purpose of the parody had prevented it from being a fair use. Here, Plaintiff's position that a tweet on these accounts is commercial is untenable. (See DE 1, pp. 26-33). There is nothing in the tweets that suggests the account holder is selling anything. Instead, a review of the pages shows congratulations to students, a request for parent volunteers, and other positive non-profit educational messages. As such, this factor weighs in favor of fair use.

6. ***Transformativeness.*** While whether a work is transformative is part of the analysis, courts have considered whether the use was commentary or criticism. By its nature, a retweet is merely commentary expressing agreement, approval, or other sentiments with the message, as was the original tweet in this instance. As shown by other posts, it was just an expression of approval. Here, when viewed in context, the posts were commentary, showing approval. *See Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 823 n.48 (5th Cir. 2002) (Wiener, J.; King, J.; Higginbotham, J.; Davis, J.; Stewart, J.; Dennis, J., dissenting) (suggesting that a use is not transformative if it makes no alteration to or commentary on the underlying work).

7. *Commercial/Non-Commercial Use.* "The crux of the profit/nonprofit distinction is ... whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562, 105 S.Ct. 2218. There is nothing commercial about the use in this instance. Assuming, as Plaintiff asks the Court to do in his Response, that District employees made the post, there is nothing to show that they stand to benefit commercially in any reasonable sense from the positive post. As such, the first factor clearly weighs in favor of fair use.

### 2. Nature of Copyrighted Work

8. The District has never claimed that Bell's work is part of the public domain as Bell asserts. (DE 13, p. 6). However, Defendant notes that Bell does not provide an argument against the District's argument that the work is at least in part factual. (DE 13, p. 13, ¶16). A plain reading of the one-page portion of the work shows that it is not a work of fiction and includes statements that to the reader do not appear to be "novel." (DE 1, p. 33). Bell's exhibit includes such statements as:

> Every competition only has one winner. No matter how many people are entered, only one person or one team wins each event.

> **Wanting it more is a decision you make and act upon** — not some inherent quality or burning inner drive or inspiration! And you have to make that value a priority.

> In order to win, you must do extraordinary things. <u>You can't just be one of the crowd</u>. The crowd doesn't win. <u>You have to be willing to stand out and act differently</u>.

> <u>You can't train like everyone else. You have to train more and train better.</u>

These lack the type of characteristics of a highly unique work, and many of the statements are just factual. You have to train. Every competition has one winner. Only one person or team wins an

event. You have to do more to win. This is not the type of highly creative or fictional work discussed by the court as requiring maximal protection. At best, this factor should be neutral.

### 3. Amount and Substantiality of Copyrighted Work

9. Neither Bell nor the District dispute that the passage at issue is not the full work. While some cases have considered whether something is the "heart of the work," Bell has not provided anything other than his own opinion about what, if anything, is the "heart of the work." However, it should also be noted that those cases are distinguishable here where the way it was used was a one-time posting of one page of the book in a manner that was in no way widely distributed. At best, this factor should also be neutral.

### 4. Effect of the Use on the Potential Market

10. The small excerpt used is not a substitute for Bell's full book from which it came. Notably, Bell pleads no facts about any actual lost book sales or other sales after the 2017 tweet or otherwise allege that the tweet of the small excerpt impacted his actual or potential sales of books. Instead, he just says that that, if widespread, book sales or related merchandise "could fall." (DE 1, p. 13). "Fair use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied." *Harper & Row*, 471 U.S. at 566-67. The fourth factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a ***substantially adverse impact*** on the potential market for the original." *Campbell,* 510 U.S. at 590 (internal citations and quotations omitted) (emphasis added). Here, as of today, more than three years have passed since Bell became aware of the tweet, yet he alleges no facts about the actual impact on his book sales. Indeed, the impact of the Twitter posting on either the @CTHSSoftball or @CTHSColor Guard pages on one day in

6


Case 4:20-cv-01157-P   Document 15   Filed 02/08/21   Page 7 of 8   PageID 115

2017 would not result in a "substantially adverse impact" on Bell's market for the book, and as we must consider here, Bell certainly has not alleged such a substantially adverse impact. As such, this factor likewise weighs in favor of fair use.

## II.  CONCLUSION AND PRAYER

WHEREFORE PREMISES CONSIDERED, Defendant Eagle Mountain-Saginaw Independent School District asks the Court to grant its motion to dismiss all claims and award any and all additional relief that the Court deems appropriate.

Respectfully submitted,

*/s/ Kelley L. Kalchthaler*
KELLEY L. KALCHTHALER
State Bar No. 24074509
WALSH GALLEGOS TREVIÑO
  RUSSO & KYLE P.C.
505 E. Huntland Drive, Suite 600
Austin, Texas 78752
Phone: (512) 454-6864
Fax: (512) 467-9318
Email: kkalchthaler@wabsa.com

MEREDITH PRYKRYL WALKER
State Bar No. 24056487
WALSH GALLEGOS TREVIÑO
  RUSSO & KYLE P.C.
105 Decker Court, Suite 700
Irving, Texas 75062
Phone: (214) 574-8800
Fax: (214) 574-8801
Email: mwalker@wabsa.com

*ATTORNEYS FOR DEFENDANT EAGLE MOUNTAIN-SAGINAW INDEPENDENT SCHOOL DISTRICT*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 8th day of February, 2021, a true and correct copy of the above and foregoing document was served upon all counsel of record as follows:

| | |
|---|---|
| Warren V. Norred | ***Via Electronic Case Filing*** |
| NORRED LAW, PLLC | |
| 515 E. Border Street | |
| Arlington, Texas 76010 | |

                                            */s/ Kelley L. Kalchthaler*
                                            KELLEY L. KALCHTHALER